### In re JAMAICA SLATE ROOFING & SUPPLY CO.

(District Court, E. D. New York. November 27, 1912.)

BANKRUPTCY (§ 176*)—CORPORATIONS—SALE OF ASSETS—RIGHTS OF CREDITORS.

K. and wife, dominating a bankrupt corporation which was engaged in performing roofing contracts, agreed to sell to H. a half interest in the property and contracts of the corporation for $1,500, of which $822.94 was to be paid in cash, $500 represented by a note, and the balance to be paid on or before January 1, 1911. The business was unsuccessful, whereupon an attorney was consulted and a second corporation formed; H. contributing the property purchased in the old corporation, while K. and wife put in the remaining half of the property of the old company, and the stock of the new company was divided between them. The new company succeeded to the contracts of the old corporation without payment, and proceeded to obtain new business. *Held*, that the sale of the assets of the old company to H. was illegal on the part of the vendors against creditors, and that K. and wife were liable to its trustee in bankruptcy for the cash received as part of the purchase price therefor, and also for one-half the cash value for which they received stock in the new company.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 249, 254; Dec. Dig. § 176.*]

In Bankruptcy. In the matter of the Jamaica Slate Roofing & Supply Company. Application by the trustee in bankruptcy to follow a sale of a half interest in the assets of the corporation to William B. Hambright, and to recover the purchase price thereof from defendants Joseph Kellow and Elizabeth P. Kellow, his wife, and to recover other assets of the corporation. Sale set aside, and defendants Kellow directed to pay over to the trustee $822.94, plus the $500 note plus $822.94, or to account for the same.

See, also, 197 Fed. 240.

M. S. Schoenbaum, of Jamaica, N. Y., for intervening creditor.
Robert McC. Robinson, of New York City, for petitioning creditors.

CHATFIELD, District Judge. The Jamaica Slate Roofing & Supply Company was a corporation, which in November, 1910, had at least three shares of stock outstanding, of which one share was owned by one Joseph Kellow, one by his wife, Elizabeth P. Kellow, and one by a man named Doubleday, who may have also owned some previously held by a Mrs. Johnson, then deceased. Joseph Kellow and his wife, not only were officers of the corporation, but conducted its business and kept its books, and Joseph Kellow was in fact responsible for its activities. It had been doing work under certain contracts, which do not seem to have proven profitable, and during the month of November, 1910, it became apparent, especially through the claim of one Menz, later reduced to judgment, that the liabilities of the corporation would soon exceed its assets. Joseph Kellow, therefore, interested one Hambright in the corporation, and succeeded in making a contract by which he and his wife agreed to sell a one-half interest in the property and contracts of the corporation to Hambright, for the sum of $1,500, of which $822.94 was to be paid at the time, $500 was represented by a note which would become payable in January, 1911, and $177.06, the balance, was to be paid on or before the 1st day of January, 1911. This contract was signed, and the payment at the time of signing was apparently made.

This brought in a little additional capital, and Kellow testifies that with this money he paid debts of the old corporation. Hambright soon found that he had not bought an interest in a profitable business, and the stockholders and Hambright consulted an attorney, who proceeded to form a new corporation, under the name of the Jamaica Slag Slate & Metal Roofing Company. Hambright put in the property which he had purchased in the old corporation, while Joseph Kellow and his wife put in the remaining one-half of the property of the old corporation, and the stock of the new corporation was divided between them. The new corporation proceeded to take over the contracts of the old corporation without payment therefor, and to obtain new business. Some of these contracts had been turned over to Hambright, or nominally assigned to him, in connection with his purchase of one-half interest in the old corporation, and were allowed to pass by him to the new corporation as a part of the payment for his stock.

In the month of April, 1911, the creditor, Menz, secured a judgment, and, upon an examination in supplementary proceedings, adjournment was obtained by the judgment debtor, the old corporation. Before the adjourned day this old corporation—that is, the Jamaica Slate Roofing & Supply Company—was thrown into bankruptcy. It appears that the creditors who filed the petition were men connected with the business; one of them being an architect, who claims to have done work in the way of preparing specifications, drawings, etc., and the other being an agent, who had solicited business or secured contracts on commission. Their testimony as to the accounts between them and

the old corporation, as to the items which entered into those accounts, and as to their connection with the entire matter, is such that no credence can be placed upon anything to which they have testified. The agent who secured business upon commission has charged and was given upon the books of the corporation much larger commissions than the total amount of business which he secured, in certain instances, and it is apparent that his account was made up afterwards, so as to cover the total which he put in as a debt against the corporation. The architect testified in a still more flippant and reckless way.

The new corporation, the Jamaica Slag Slate & Metal Roofing Company, did not assume the debts of the old corporation, nor did it respect the rights of the creditors of the old corporation, nor the contracts of that corporation. But, as if assuming that the old corporation would be able to prevent its creditors from following any of its assets, the new corporation went ahead with the contracts which appeared to be valuable, and left the creditors of the old corporation to satisfy their claims out of the mere corporate name, which was substantially all that was left. The attorney who formed the new corporation had done some work for the old. The situation (which was known to the stockholders, to the officers, and to the persons representing the old corporation in litigation) was such that the new corporation could not take over these assets without giving a fair consideration, unless it remains liable therefor to the creditors of the old corporation.

Under these circumstances the trustee in bankruptcy has made an application to have the sale of the assets of the old corporation to William B. Hambright—that is, the sale of the one-half interest, out of which he later paid for his share in the new corporation—declared null and void, and also for a decree directing Joseph Kellow and Elizabeth P. Kellow to turn over the sum of $1,500 (which they were charged to have received from that sale) to the said trustee. Hambright has not been made a party to this proceeding, and it is therefore impossible to hold that the property which he received from this sale, or the property or interest which he may have in the new corporation, can be disposed of by an order of this court upon this motion.

The testimony further shows that he never paid the total amount of the consideration specified. The first payment of about $822, and the note for $500 (which was later taken care of by Kellow and not paid by Hambright), were all the consideration that was paid. It appears plainly that neither Kellow nor his wife had the right to sell the property of the old corporation for their own profit or advantage, and that if they did sell a one-half interest, or did convey any of the property of that corporation, the proceeds must be used for the benefit of the Jamaica Slate Roofing & Supply Company, the first corporation.

The testimony of Kellow, as well as that of the two petitioning creditors and of Hambright, is such that no credence can be placed in any-

thing except the inadvertent statements, as to which no intentional design can be inferred. Kellow testified that he used the money received from Hambright to pay the debts of the former corporation; but he has kept no books which will satisfactorily show his disposition of this money, and his careful failure to know anything about any of the matters (which he could not help but remember, if he was honest in purpose) is sufficient to cause disregard of his testimony entirely. But, taking the record which is shown, it does appear that Kellow and his wife received $822.94 and a $500 note, for which he has not accounted, but which he apparently disposed of by admitting payment without receiving cash therefor.

Kellow and Hambright now claim that, instead of one half of the available assets of the Jamaica Slate Roofing & Supply Company and contracts having been delivered to Hambright, he received nothing but some old tools and materials, for which he paid down at the time of the sale the same amount as he had agreed to pay for an actual half interest. This cannot be believed, and it is apparent that a one-half interest in the property of the old corporation was actually turned over to Hambright, and if he paid any cash therefor it went into the hands of Kellow, who may or may not have used any of it for the purposes of the old corporation. But the old corporation was insolvent, and a scheme or plot is plainly shown at the time of the transfer to Hambright, by which Kellow intended to get money by disposing of one-half of the assets of the corporation, instead of transferring to Hambright one-half of the capital stock. The latter course would give the creditors the benefit of the additional capital, while the former would be fraudulent, unless the price was fair and the proceeds properly accounted for. The formation of the new corporation completed the transaction, and it is apparent that the Kellows used the interest which they possessed in the stock of the old corporation to acquire a one-half interest in a new corporation, which would have all the assets of the old, but none of its liabilities, and that Hambright was also to acquire a one-half interest in the new corporation by means of the assets which had previously been transferred to him by a sale that fraudulently deprived the creditors of one-half of the available assets, unless Kellow honestly accounted to the creditors or to the old corporation for the proceeds of this sale.

The whole transaction is so palpably fraudulent (except as to some of Hambright's acts) that the present motion should be granted, so far as it can be allowed upon the testimony herein. Hambright did give a $500 note, which has not been accounted for by Kellow. This should be turned over to the trustee in bankruptcy. Kellow did receive $822.-94, for which he has not accounted in any way, by testimony which can be believed. He and his wife did have a one-half interest in the old corporation and in the assets thereof, and this interest and these assets were transferred to the new corporation in return for the capital stock thereof. The contract with Hambright shows that one-half of the assets, even assuming that the capital stock was worthless, was valued by them at $1,500. This valuation would seem to be inflated,

for the experience of Hambright, in the month immediately preceding the formation of the new corporation, would indicate that he did not receive that amount of property, and that he was for that reason allowed by Kellow to have a one-half share in the new corporation, upon turning over exactly what he had received, and without the payment of the additional $500. As between Hambright and Kellow this was permissible; but as against the creditors of the old corporation Hambright should be compelled to fulfill his contract. But, from another standpoint, the valuation placed by Hambright and by Kellow upon the actual one-half assets of the corporation, viz., the sum of $822.94, is as much as, on the present testimony, can be definitely fixed as the value of the remaining assets of the old corporation, which Joseph Kellow and his wife concealed from its creditors by transferring them to a new corporation formed by themselves. The new corporation, in so far as it is owned or controlled by Kellow and his wife, is merely a form or name under which they are conducting business with the assets of the old corporation, which belonged, at the time that they planned to save those assets, to the creditors of the old corporation.

Joseph Kellow and his wife should therefore be directed to pay over to the trustee in bankruptcy of the old corporation the admitted value of the one-half share in the assets of the old corporation, viz., $822 94, also to turn over to the trustee the $500 note given by Hambright, and from the payment of which he was relieved by Kellow as a part of the fraudulent scheme by which Kellow was endeavoring to obtain the assets, while paying none of the creditors, and to pay over or account for the $822.94 received from Hambright.